**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ANTHONY GLEN,** | |
| **Plaintiff,** | |
| v. | **Case No. 3:26-CV-598-NJR** |
| **ERIKA WRIGHT, LEAH SIKS, and DEPARTMENT OF CHILDREN & FAMILY SERVICES,** | |
| **Defendants.** | |

## AMENDED MEMORANDUM AND ORDER[1]

**ROSENSTENGEL, District Judge:**

This matter is before the Court on review of Plaintiff Anthony Glen's amended complaint.[2] (Doc. 7). Glen, who is proceeding *pro se*, is an inmate of the Illinois Department of Corrections currently incarcerated at Taylorville Correctional Center. (*See* Doc. 2). Pursuant to this Court's order of May 11, 2026 (Doc. 5), Glen has submitted an amended complaint (Doc. 7). In Glen's amended complaint, he alleges that Defendants

---

[1] A nearly identical copy of this order was issued on June 10, 2026. (Doc. 11); *see also Glen v. Wright*, No. 26-CV-598, 2026 WL 1678222 (S.D. Ill. June 10, 2026). The Court has since become aware of a few clerical errors; specifically, (1) an accidentally omitted quotation mark, *Glen*, 2026 WL 1678222, at *2 n.4; (2) the unintentional omission of subsection designations in describing the historical enactment of the Prison Litigation Reform Act of 1995, *id.* at *3; and (3) typographical errors in referring to 42 U.S.C. § 1997e(a), *Glen*, 2026 WL 1678222, at *3–4. The Court may correct these sorts of errors on its own initiative. FED. R. CIV. P. 60(a); *accord* 12 *Moore's Federal Practice - Civil* §§ 60.11, 60.13 (2026); *see also United States v. Griffin*, 782 F.2d 1393, 1396–97 (7th Cir. 1986) (explaining which errors are and are not correctable under Rule 60(a)). Accordingly, the Court enters this amended order, which supersedes its previous order of June 10, 2026. This amendment does not change the outcome for Plaintiff Anthony Glen in any way; for all practical purposes, the two orders are identical.

[2] This Court ordered Glen to amend his original complaint (Doc. 1) for a violation of Rule 5.2(a) of the Federal Rules of Civil Procedure (Doc. 5). The initial complaint was never subjected to a screening under 28 U.S.C. § 1915(e).

Erika Wright, Leah Siks, and the Illinois Department of Children and Family Services (DCFS) made material misrepresentations in his minor children's foster care proceedings and ignored his written warnings about the danger of the proposed foster parents. (Doc. 7). According to the amended complaint, his children were placed in a foster home where they were physically and sexually abused as a result of Defendants' actions. *Id.* He brings this action under 42 U.S.C. § 1983 for compensatory and punitive damages in the amount of 50 million dollars. *Id.*

Because this Court granted Glen's motion to proceed in district court without prepaying fees or costs (Doc. 10), his amended complaint must now be screened pursuant to 28 U.S.C. § 1915(e)(2). Section 1915(e)(2) requires careful threshold scrutiny. If the Court determines that Glen's action is frivolous or malicious, § 1915(e)(2)(B)(i), fails to state a claim upon which relief can be granted, § 1915(e)(2)(B)(ii), or seeks monetary relief against a defendant who is immune from such relief, § 1915(e)(2)(B)(iii), then "the court shall dismiss the case." 28 U.S.C. § 1915(e)(2); *see also Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003) ("District judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense.").

For the reasons set forth below, Glen's amended complaint must be dismissed without prejudice.[3] The Court first examines the text of § 1915(e)(2)(B)(iii) and concludes that Glen's entire amended complaint must be dismissed. Second, the Court explains why

---

[3] Because this Court would permit a non-indigent plaintiff in the same position to amend his complaint, Glen will also be permitted to file a second amended complaint. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1023–25 (7th Cir. 2013).

dismissal would be required even under a contrary interpretation of the statutory text.

## ANALYSIS

Glen's amended complaint runs into trouble more or less immediately: one of the three named defendants is DCFS (Doc. 7, at 4), a state agency entitled to sovereign immunity, *e.g.*, *Woods v. Ill. Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 764 (7th Cir. 2013). Because Glen only seeks damages as a remedy (Doc. 7, at 9), DCFS is immune from his suit under the Eleventh Amendment to the United States Constitution. *See, e.g.*, *Tang v. Ill. Dep't of Child. & Fam. Servs.*, No. 17-cv-05790, 2021 WL 4477891, at *2 (N.D. Ill. Sept. 30, 2021). In other words, Glen's "action . . . seeks monetary relief against a defendant who is immune from such relief." § 1915(e)(2)(B)(iii).

According to the plain text of the statute, the Court is now required to dismiss Glen's "case." 28 U.S.C. § 1915(e)(2) (providing that, if the Court determines one of the three enumerated defects is present, "the court *shall* dismiss the case" (emphasis added)); *see also Murphy v. Smith*, 583 U.S. 220, 223 (2018) ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion." (alteration in original) (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998))). But in practice, courts tend to apply § 1915(e)(2) on a claim-by-claim basis. *E.g.*, *Porter v. Murphy*, No. 24-CV-5, 2024 WL 4363297 (N.D. Ind. Oct. 1, 2024); *Eldridge v. City of Alton*, No. 24-CV-1788, 2025 WL 3537568 (S.D. Ill. Dec. 10, 2025); *Edwards v. Lake Terrace Condo. Ass'n Bd. of Dirs.*, No. 10 C 2986, 2010 WL 3516173 (N.D. Ill. Aug. 31, 2010). *But see Lloyd v. Ala. Dep't of Corr.*, No. 19cv411, 2019 WL 5057944, at *1 (M.D. Ala. Oct. 8, 2019) (explaining that its dismissal of a prisoner's claim was not under § 1915(e)(2), which "authorizes dismissal of only 'the

case,' not a claim, and here the court is not dismissing the entire case"). And when a *pro se* plaintiff seeks monetary relief from an immune defendant, courts (including this one) have commonly—maybe ubiquitously—dismissed only the immune defendants. *E.g.*, *Rose v. Illinois ex rel. Jud. Branch*, No. 25-CV-1207, 2025 WL 3153411, at *2–3 (S.D. Ill. Nov. 12, 2025); *see, e.g.*, *Maddox v. Berge*, 473 F. Supp. 2d 888, 897 (W.D. Wis. 2007) ("Section 1915(e)(2)(iii) requires dismissal of any *claim* that 'seeks monetary relief from a defendant who is immune from such relief.'" (emphasis added) (quoting § 1915(e)(2)(B)(iii))); *see also, e.g.*, *Al-Haj v. OMH*, No. 18-CV-5505, 2019 WL 2074726 (S.D.N.Y. May 10, 2019) (dismissing claims against only two of three defendants under § 1915(e)(2)(B)(iii)); *cf. Porter*, 2024 WL 4363297, at *2–3 (dismissing claims against immune defendants with prejudice but claims against non-immune defendants without prejudice).

In the Court's view, the common practice of dismissing individual claims under § 1915(e)(2)(B)(iii) is incorrect. The meaning of the statutory text is plain and unambiguous: if a plaintiff's *action* seeks monetary relief from *an* immune defendant, the court must dismiss *the case*. The statute does not direct courts to sever and dismiss only the *claims* seeking money damages from immune defendants. Instead, it contemplates the dismissal of an entire case if a given condition is true: that it seeks monetary relief from any defendant who is immune from such relief.[4] Here, it is literally untrue to say that

---

[4] Congress used the word "action" to describe the unit of evaluation. § 1915(e)(2)(B). The statute does not ask the Court to evaluate whether a given claim seeks relief from an immune defendant, but whether the *action* does. § 1915(e)(2)(B)(iii). And, if the Court determines that an action does do so, the statute describes what must be dismissed as "the case," not "the claim." *Id.* This is also why the typical practice of evaluating individual claims for frivolousness, maliciousness, or failures to state a claim is perfectly consistent with

Glen's action does *not* seek monetary relief from an immune defendant: DCFS is a named defendant, and he only seeks monetary relief. Accordingly, Glen's complaint must[5] be dismissed under § 1915(e)(2)(B)(iii).

Other courts have reached the same conclusion when interpreting analogous language. For instance, take Rule 41(a) of the Federal Rules of Civil Procedure, which governs voluntary dismissals of "an action." FED. R. CIV. P. 41(a)(1)–(2). The Seventh Circuit has held that voluntary dismissals of individual claims are not permitted because the word "action" refers to the entire case. *Berthold Types Ltd. v. Adobe Sys. Inc.*, 242 F.3d 772, 777 (7th Cir. 2001) ("Nevertheless, Rule 41(a)(1)[] does not speak of dismissing one claim in a suit; it speaks of dismissing 'an action'—which is to say, the whole case."); *Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015) (holding that the same is true as to Rule 41(a)(2) under its plain meaning, as it also refers exclusively to "actions"). To reach a contrary result—to dismiss only Glen's claim against DCFS, rather than the entire complaint—this Court would need to pretend that when Congress wrote the word "case," what it really meant was "claim." But it is not this Court's place to second-guess the words Congress has chosen to employ. *E.g.*, *Murphy v. Smith*, 583 U.S. 220, 224 (2018) ("[R]espect for Congress's prerogatives as policymaker means carefully attending to the

---

this Court's interpretation of the statute. An action seeks monetary relief from an immune defendant whether every named defendant is immune or only one is; the same cannot be said of frivolousness, maliciousness, and failure to state a claim. If a plaintiff brings an action with four counts, one of which is frivolous and another of which fails to state a claim, one would not be using words' ordinary meanings to describe the entire action as frivolous or as failing to state a claim; ergo, dismissal of the entire case would not be required under § 1915(e)(2)(B).

[5] Section 1915(e)(2)'s use of the word "shall" does not leave this Court with discretion to ignore the statutory command. *See Murphy v. Smith*, 583 U.S. 220, 223 (2018) (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)).

words it chose rather than replacing them with others of our own.")

The strongest evidence that § 1915 means what it says comes from the immediately subsequent provision of the United States Code, 28 U.S.C. § 1915A. Sections 1915(e) and 1915A were both enacted as part of the Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321-71 to -75. Where § 1915(e)(2) directs courts to screen the complaints of plaintiffs seeking to proceed *in forma pauperis* (regardless of whether they are imprisoned), § 1915A directs courts to screen the complaints of all imprisoned plaintiffs (regardless of whether they seek to proceed *in forma pauperis*). Both provisions direct courts to look for frivolousness or maliciousness, failures to state a claim, or suits seeking monetary relief from defendants who are immune from such relief. §§ 1915(e)(2)(B), 1915A(b). But despite being enacted at the same time by the same Congress, they differ materially in describing what a court should dismiss if a complaint contains an enumerated defect. While § 1915(e)(2) requires a court to "dismiss the case," Congress wrote in § 1915A(b) that the screening court must "dismiss the complaint, *or any portion of the complaint*." § 1915A(b) (emphasis added).

The textual variation between § 1915(e)(2) and § 1915A(b) would not ordinarily be so significant: the United States Code is vast and sprawling, and it would be unrealistic to expect its usage of terms to be perfectly consistent throughout. *E.g.*, Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170–73 (2012). Sections 1915(e) and 1915A, however, were enacted in the same bill at the same time; indeed, the text of §§ 1915(e) and 1915A(b) were drafted on adjacent pages. Pub. L. No. 104-134, 110 Stat. 1321-74 to -75. If ever one would expect Congress to use the same words to mean the

same thing, and different words to mean different things, it would be in this context. *See, e.g.*, Scalia & Garner, *supra*, at 173.

It is worth acknowledging that in *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court reached a different conclusion in interpreting 42 U.S.C. § 1997e(a), another provision of the PLRA. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." The Supreme Court held that § 1997e(a) does not require the dismissal of an entire action if only some of its individual claims are unexhausted; instead, courts should analyze exhaustion on a claim-by-claim basis. *Jones*, 549 U.S. at 219–24. It explained that the statute's reference to an "action" was insufficient to overcome the general rule that "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad. . . . 'If Congress meant to depart from this norm, we would expect some indication of that, and we find none.'" *Id.* at 220–21 (quoting *Robinson v. Page*, 170 F.3d 747, 748–49 (7th Cir. 1999)).

But unlike § 1997e(a), the PLRA's exhaustion requirement, 28 U.S.C. § 1915(e)(2) does provide a clear indication of Congress's intention to depart from that general rule: the difference in language between § 1915(e)(2) (the general-purpose indigence screening provision) and § 1915A(b) (the prisoner-specific screening provision), which otherwise largely mirror each other. Section 1997e(a), by contrast, is structurally and functionally dissimilar to both § 1915(e)(2) and § 1915A(b). Instead of mandating that courts screen certain classes of actions and appeals, it imposes a procedural requirement directly on prisoners. It makes sense that the *Jones* Court was unpersuaded by comparisons of

§ 1997e(a) to § 1915A(b), because they are not parallel provisions. Sections 1915(e)(2) and 1915A(b), on the other hand, perform the exact same function for two different sets of cases. When Congress chose to vary the language between those two sections, it provided precisely the indication that was absent in *Jones*.

The Court concludes that Glen's complaint should be dismissed without prejudice pursuant to § 1915(e)(2)(B)(iii). [6] However, even if the Court were incorrect in its interpretation of that provision, the result would be the same. Assuming, for the sake of argument, that the § 1915(e)(2)(B)(iii) dismissal applied only to Glen's claim against DCFS, the rest of his complaint would still be "transparently defective." *Hoskins*, 320 F.3d at 763.

In Glen's remaining two claims, he alleges that Defendants Wright and Siks, DCFS employees, were involved in the placement of his minor children in a foster home. According to the complaint, Wright and Siks planned to place his children in the home of a foster mother they claimed was a godmother and family member of the children. Glen alleges that he wrote Wright and Siks to inform them that the proposed foster parent was neither the children's godmother nor a family member. He also allegedly informed them that his children would be in danger if placed in the home of the proposed foster mother. He claims that Wright and Siks ignored his letters, misrepresented the proposed foster parent's relationship, and caused his children to be placed in the foster home where

---

[6] Because this Court dismisses Glen's amended complaint for seeking monetary relief from an immune defendant, this dismissal should not count as a "strike" under § 1915(g), which only applies to actions dismissed as frivolous, malicious, or failing to state a claim. *See Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 823 (7th Cir. 2025).

they were, ultimately, abused.

The first problem is jurisdictional. Children in state custody have a constitutional right "not to be handed over by state officers to a foster parent or other custodian . . . whom the state knows or suspects to be a child abuser." *Waubanascum v. Shawano County*, 416 F.3d 658, 665 (7th Cir. 2005) (emphasis omitted) (quoting *K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 852 (7th Cir. 1990)). But that right belongs to Glen's children, not to Glen himself; accordingly, he does not have standing to bring suit for an alleged violation of that right. *See, e.g.*, *Chaudhry v. Thorsen*, No. 20-cv-50381, 2026 WL 766048, at *7–8 (N.D. Ill. Mar. 18, 2026) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))). Where a plaintiff lacks standing, a federal court has no jurisdiction to hear the claim. *E.g.*, *Dinerstein v. Google, LLC*, 73 F.4th 502, 511 (7th Cir. 2023) (citing *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020)). So, if Glen's amended complaint were construed as pursuing relief solely on his own behalf, the Court would be required to dismiss it under Rule 12(h)(3). FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

But the Court is mindful that *pro se* complaints are to be construed liberally. *E.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))). Accordingly, the Court assumes Glen intended to bring

these claims as next friend to his children. Children cannot bring suit in federal court on their own; instead, they "must be represented by a competent adult, ordinarily a parent or relative." *Johnson v. Collins*, 5 F. App'x 479, 485 (7th Cir. 2001) (first citing *T.W. by Enk v. Brophy*, 124 F.3d 893, 895 (7th Cir. 1997); and then citing FED. R. CIV. P. 17(c)). This reading of Glen's complaint would eliminate the potential jurisdictional defect.

Even construed liberally, however, Glen's claims remain defective. Glen is proceeding without the representation of counsel, and *pro se* parents may not litigate on behalf of their minor children.[7] *E.g.*, *Bowersock v. Matherly*, No. 23-1368, 2023 WL 6847548, at *6 (C.D. Ill. Oct. 7, 2023); *Bullock v. Dioguardi*, 847 F. Supp. 553, 560 (N.D. Ill. 1993) ("Although a parent has a right to litigate claims on his own behalf without an attorney, he cannot litigate the claims of his children unless he obtains counsel." (citations omitted)). "Because the choice to appear *pro se* is not a 'true choice' for minors who cannot determine their own legal actions, minors are entitled to trained legal assistance so that their rights may be fully protected." *Johnson*, 5 F. App'x at 485 (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).

Ultimately, Glen cannot bring a *pro se* claim against Wright and Siks for violations of his children's rights. *E.g.*, *Bowersock*, 2023 WL 6847548, at *6. So even if § 1915(e)(2)(B)(iii) only barred one of Glen's claims, the outcome would not change. Depending on how the Court construed Glen's amended complaint, he would either lack

---

[7] There are narrow exceptions to this rule, none of which are applicable here. *See, e.g.*, *Bowersock v. Matherly*, No. 23-1368, 2023 WL 6847548, at *6 (C.D. Ill. Oct. 7, 2023) (first citing *Oleszczak ex rel C.O. v. Ill. Dep't of Child. & Fam. Servs.*, No. 17 C 933, 2018 WL 3428102, at *3 (N.D. Ill. July 18, 2018); and then citing *Wrhel v. United States*, No. 18-cv-1199, 2018 WL 3800251, at *2 (C.D. Ill. July 25, 2018)).

standing or be impermissibly representing the interests of his minor children without counsel. Under either approach, the Court would be obliged to dismiss his amended complaint.

## CONCLUSION

For these reasons, Plaintiff Anthony Glen's amended complaint (Doc. 7) is **DISMISSED without prejudice**. However, Glen will be permitted to file a second amended complaint.

If Glen seeks to litigate the rights of his minor children, he must at a minimum have legal representation.[8] Glen **SHALL NOT** file a second amended complaint purporting to represent his children as next friend **unless he first secures legal representation**. The Court encourages Glen to seek legal representation on his own. If he attempts to secure legal representation and does not succeed, he may ask the Court to appoint counsel for him under § 1915(e)(1). *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). If Glen chooses to ask this Court to appoint counsel to help him sue on his children's behalf, **he must file a motion requesting appointment of counsel before he files his second amended complaint**.[9]

The Court warns Glen that, if he requests appointed counsel, he must show that

---

[8] The Court does not wish to offer false hope: even if he secures legal representation, he may or may not be legally entitled to represent their interests as next friend. *See, e.g., Burnside v. Ill. Tenth. Jud. Cir. Ct.*, No. 23-cv-01107, 2023 WL 3568097, at *4 n.4 (C.D. Ill. Apr. 24, 2023) (citing *Navin v. Park Ridge Sch. Dist. 64*, 270 F.3d 1147, 1149 (7th Cir. 2001)).

[9] If, however, Glen seeks *only* to litigate his *own* rights, not those of his children, he may file a second amended complaint without requesting appointment of counsel or securing legal representation on his own. *See, e.g., Humphrey v. Maury Cnty. Bd. of Educ.*, No. 26-cv-00037, 2026 WL 1068989, at *3–4 (M.D. Tenn. Apr. 20, 2026). The requirement only applies if he is seeking to represent the interests of his children in this lawsuit.

he has made a reasonable attempt to obtain counsel himself (or that he has been effectively precluded from doing so). *See Santiago v. Walls*, 599 F.3d 749, 760 (7th Cir. 2010).

Glen is further **ORDERED** to file either a second amended complaint or a request for representation of counsel **on or before August 10, 2026**. Failure to comply with this Court's order may result in the dismissal of this action.

Finally, the Court advises Glen that pursuant to this Court's Local Rules, he is under a continuing obligation to keep the Court informed of any change in his location. SDIL-LR 3.1(b)(2). If his address changes, he must notify the Court **within 14 days** of the change by filing a Notice of Change of Address. Failure to do so may result in the dismissal of this action for want of prosecution.

**IT IS SO ORDERED.**

**DATED:   June 16, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**